UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) | Criminal No. 20cr10192 |
| v. | ) ) ) | **DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** |
| TEVON NGOMBA, a/k/a "Chow," Defendant. | ) ) ) |  |

NOW COMES the Defendant, Tevon Ngomba, who replies to the Government's Opposition to Defendant's Motion to Suppress and hereby respectfully moves that this Honorable Court suppress all physical evidence seized or derived from an illegal warrantless search performed on August 3, 2020, by members of ATF Group 6 on a black Acura bearing Massachusetts Registration 5GJG20 in the area of Temple Street and Sydney Street in the City of Somerville, Massachusetts.

I.  The Defendant had a reasonable expectation of privacy under the Fourth Amendment.

The Fourth Amendment's protection against unreasonable searches may only be claimed where a defendant demonstrates that he personally has a reasonable expectation of privacy in the place searched (*United States v. Santiago Dejesus*, 2021 U.S. Dist. Lexis 94336 (D. P.R. 2021). in the context of a vehicle search, the defendant must show "a property (or) a possessory interest in the automobile" to establish a reasonable expectation of privacy. *United States v. Symonevich*, 688 F.3d 12, 19 (1st Cir. 2012). That is, the defendant bears the burden of establishing "that he gained possession from the owner or someone with authority to grant permission." *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003). "Defendant must present at least some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy." There is no bright line rule that governs whether a person has a reasonable expectation of privacy in a vehicle.

Instead, the courts consider a number of factors. *United States v. Almeida*, 748 F.3d 41, 47 (1st Cir. 2014). They include ownership, possession, and/or historical use of the property searched or the thing seized, ability to regulate access, the totality of the surrounding circumstance, the existence or nonexistence of a subjective anticipation of privacy, and the objective reasonableness of such an expectancy under the facts of a given case. In short, the Court looks to whether or not the individual thought of the place (or the article) as a private one, and treated it as such. *Id*. (citing *Aguirre*, 839 F.2d at 856-57).

In *United States v. Peraza*, 2014 U.S. Dist. Lexis 157754, the court ruled that (although defendant Gonzalez did not have her name on the Ford Explorer's registration), she had a long-term relationship with defendant Peraza, they had lived together for several years, and on the date of the incident, were traveling after having spent a couple nights in a hotel. Although Gonzalez was not driving the vehicle, she was more than just a mere passenger with permission to ride. In light of her ongoing relationship with the vehicle's owner (Defendant Peraza), the defendant had an objectively reasonable expectation of privacy in the vehicle based on their relationship and shared use of the vehicle. See *United States v. Deysie*, 2014 U.S. Dist. Lexis 108961 (D. Ariz. 2014) (Holding passenger who was in a long-term live-in relationship with the driver had standing to challenge vehicle search. Deysie was keeping his personal belongings and luggage in the vehicle during the trip with consent of Amaro. This establishes that he had a subjective expectation of privacy in the vehicle. A person who operates a car with permission of the owner has been found to have a legitimate expectation of privacy. Although Deysie was not personally operating the vehicle at the time of the stop, he had a similar level of possessory and exclusionary interest in that vehicle.

Here, Ngomba was not a mere passenger and had an objectively reasonable expectation of privacy in the car. He had a romantic relationship with the owner of the vehicle. See Docket Entry 105, Attachment #1 (*Affidavit of Tevon Ngomba*). In her voluntary interview, the owner of the vehicle stated that she and Ngomba were traveling after having spent the night together at Encore Hotel and, before leaving the Encore Hotel, Ngomba accessed her trunk on his own without any assistance and with her knowledge. She stated that Ngomba's bag in the trunk only contained clothes and a white t-shirt. Upon the police search, Ngomba's wallet, identification

papers, driver's permit, and cell phone were located in the glovebox, and his bag was in the trunk of the vehicle. A key to the Encore Hotel was also found in the trunk.

The owner of the vehicle stated that Ngomba frequently slept at her residence. ATF special agents then requested a voluntary consent of the home of the vehicle's owner, which was given. Though no evidence was found in the home, the vehicle's owner established that she and Ngomba were in the stages of an ongoing relationship that included living together, traveling together, and having a possessory interest in the vehicle they drove around together in. See Affidavit of Tevon Ngomba attached hereto.

Further, the government's argument that the police had probable cause to search the vehicle under the automobile exception is misplaced. In the earlier drug sale in July, the drugs did not come from the car, but from the apartment he went into, so there was no reason to believe he had drugs in the vehicle. In the second sale, Ngomba was found with $1,500 the confidential witness gave him on his person and not in the vehicle when the police stopped him. The police were not going to find the money in the car. Further, no gun was found on his person and the confidential witness drove away with a white towel and t-shirt under the seat. She did not stop the car to look under the seat to see if the gun was there or in any other place in the back seat.

II.     Collective Knowledge Doctrine

On July 9, 2020, agents from the ATF and detectives from the Somerville Police Department debriefed each other on Ngomba's identifying information, including date of birth and social security number, and personal information, including that Ngomba had recently been released from prison after serving a five (5) year sentence. See **Exhibit 1 (**Ngomba-000003). It can be collectively imputed that agents and officers knew Ngomba did not possess a driver's license upon their initial investigation and debriefing. Agents from the ATF and detectives from the Somerville Police Department then conducted surveillance on Ngomba on two separate occasions: July 16, 2020 and August 3, 2020.

Under the "collective knowledge" doctrine, information known by one law enforcement officer in an investigation can be imputed to other officers. See *United States v. Meade*, 110 F.3d 190 (1st Cir. 1997) (collective knowledge applies to findings of probable cause). *United States v. Azor*, 881 F.3d 1, 8 (1st Cir. 2017). When an officer with information amounting to probable

cause directs an officer who lacks that knowledge to make an arrest, courts may impute the directing officer's knowledge to the acting officer. *Meade*, 110 F.3d at 193. The Eleventh Circuit divides the collective knowledge doctrine categories horizontal and vertical (in a case involving vertical knowledge, one officer has probable cause and instructs another to act). *United States v. Chavez*, 534 F.3d at 1345 (10th Cir. 2008).

On July 16, 2020, the agents and detectives established that Ngomba was the passenger in the Black Acura. In a report of the July 16, 2020 investigation summarized by the ATF, agents identified the vehicles registration, the owner's name, date of birth, and address. In the report, agents noted that a confidential informant was following Ngomba in the Black Acura operated by the (female) owner of the Black Acura. See **Exhibit 2** (Ngomba 000007-000008). No subsequent investigation was ever made regarding the owner of the female owner of the Black Acura.

On August 3, 2020, surveillance personnel again observed Ngomba in the passenger seat of the Black Acura operated by its female owner in the area of Temple Street. Ngomba was observed in and around the vehicle, while the owner never left the vehicle. After walking away from the vehicle, Ngomba was arrested on foot on Mystic Ave. At this point, the reports between ATF agents and Somerville police detectives differ. In their narrative, ATF agents advised surveillance personnel to conduct a motor vehicle stop of the Black Acura and asked for voluntary consent to search the vehicle. See **Exhibit 3** (Ngomba 0000017-000018, Paragraph 2)**.** In Somerville Police Detective Rego's narrative, the female owner of the vehicle was ordered to exit the vehicle, informed of the ongoing investigation regarding Ngomba and read Miranda warnings. See **Exhibit 4** (Ngomba 000042-000045, Page 3). When asked if anything illegal was in the vehicle, she responded with "I don't know, not that's mine." Ngomba was charged with all evidence seized from the female owner's vehicle after her consent while Ngomba was being detained, but prior to his arrest. At that point, there was no probable cause to search the vehicle where Ngomba had been detained but not arrested.

*United States v. Luciano*, 329 F.3d 1 (1st Cir. 2003). If, under all the circumstances, it has appeared that the consent was not given voluntarily – that it was coerced by threats or force, or granted only in submission to a claim of lawful authority then we have found consent invalid and the search unreasonable. *United States v. Barnes*, 506 F.3d 58 (1st Cir. 2008). Besides evidence

of police coercion or intimidation, the totality of the circumstances test would require consideration of any evidence that law enforcement officers fraud, deceit, trickery, or misrepresentation prompted the vehicle owner's acquiescence to search.

Here, agents and detectives ordered the female owner of the black vehicle to exit her vehicle and read her Miranda rights while simultaneously telling her they were conducting an investigation against Ngomba – after ATF and Somerville Police Department surveillance teams established Ngomba's possessory interest in the Black Acura while he was present as a passenger in the vehicle with its owner on two (2) separate occasions. Agents and officers had a duty to gain voluntary consent to search the vehicle from both parties or apply for a search warrant for same.

III.     Fruit of the Poisonous Tree

The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 104 S.Ct.3380 (1984). It is applicable when the police exhibit deliberate, reckless or grossly negligent disregard for fourth amendment rights, and the deterrent value of exclusion is strong and tends to outweigh the resulting costs. *United States v. Stephens*, 764 F.3d 327 (4th Cir. 2014).

Here, the evidence of a contraband firearm along with fentanyl found inside the vehicle the defendant was in was obtained as a direct result of an illegal search or seizure by the ATF and Somerville Police. By ordering the white female to exit the car, the police created a hostile, uncomfortable situation which created duress and prompted her to acquiesce and agree to the search. Also, the items in the glove compartment and the trunk became the evidence for the charged conduct (possession of a firearm by convicted felon along with possession of fentanyl with intent to distribute).

IV.     Agents and Officers had Insufficient Probable Cause Prior to Arrest Before Seeking Consent to Search the Vehicle Owned by the Defendant's Girlfriend

During surveillance, Ngomba was observed running on Temple Street, then he continued running onto Mystic Avenue. The confidential witness had stated that she had been ripped off and she alleged that there was no gun in the car. However, when Ngomba was stopped on Mystic

5

Avenue for an arrest to be initiated although he had no gun in his possession. There was no probable cause to arrest him prior to requesting the search of his girlfriend's vehicle. However, his detention became a de facto arrest by the ATF prior to their request for consent to search his girlfriend's vehicle. An arrest occurs when "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L.Ed.2d 497 (1980).

Although the police may have had reasonable suspicion, they did not have probable cause to initiate the arrest because the gun was not in Ngomba's possession. Without the consent to search, they would not have been able to retrieve the gun without a search warrant and would not have been able to arrest Ngomba prior to the search. A de facto arrest must be supported by probable cause. *Llinois v. Gates,* 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983). The only thing that the officers knew at the time of Ngomba's detention was that he was holding money in his hand. This in and of itself was not sufficient probable cause to arrest Ngomba and the search of the vehicle prior to his arrest was the result of an unconstitutional seizure, as there was insufficient probable cause to search the vehicle at that point because there was no gun in his possession, no probable cause, and the confidential witness had said that she had been ripped off. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889, 44 Ohio Op. 2d 383 (1968).

V.   <u>An Evidentiary Hearing Is Necessary</u>

An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question. *United States v. Pena*, 961 F.2d 613, 621 (9th Cir. 1979). Tevon Ngomba has made a sufficient threshold showing that material facts are in doubt or in dispute. *United States v. Vilches-Navarette*, 523 F.3d 1, 15 (1st Cir. 2008).

The government has asserted that no warrant or consent was needed for law enforcement to conduct a post-deal search of the vehicle under the automobile exception doctrine. However, the circumstances in this case clearly show that Tevon Ngomba had a legitimate expectation of privacy in the vehicle because, in the July 16th encounter with the confidential informant, Ngomba is seen by law enforcement inside the Black Acura in the front passenger seat with his girlfriend in the driver's seat. He instructed the confidential informant to follow him and the car

6

drove to Mystic River Development public housing complex at 30 Memorial Drive, where Ngomba retrieved a bag from inside the building and reentered the car. An alleged drug transaction then occurred. Later on, the August 3rd arrangements were allegedly made again between Ngomba and the confidential informant for a new transaction. The same exact vehicle was used as in the first transaction. Personal effects belonging to Ngomba were in the glove compartment, including his cell phone, driver's permit, and wallet. The police allege he left his cell phone in the confidential informant's vehicle, but the ATF report states his cell phone was in the glove compartment of the Black Acura. A search warrant was conducted on the phone retrieved in the confidential informants car but not on the phone retrieved from the Black Acura – even though Ngomba's girlfriend alleged it belonged to him. Most importantly, the girlfriend and owner of the Black Acura was never charged with any crime. It therefore follows all the actions of where the vehicle traveled was exclusively controlled by Ngomba's directions.

Accordingly, it was only Ngomba acting alone who had the exclusive dominion and control over the vehicle's direction and the same car was used on both dates of the alleged transactions. When asked, the white female owner of the Black Acura and Ngomba's girlfriend at the time (in July and August, 2020) stated she and Ngomba had stayed at the Encore Hotel the night before and had been sleeping in Stoneham, MA together somewhat frequently. Whether Ngomba had a possessory interest requires an evidentiary hearing to resolve the material inconsistencies and to assist the Court in making the detailed factual findings necessary to resolve the issues in this case.

Respectfully submitted,
Tevon Ngomba,
By his attorney,

/s/ J. Daniel Silverman
_____
J. Daniel Silverman
669 Main Street
Wakefield, MA 01880
(781) 245-9019
Jds01880@verizon.net
BBO: 555491

Date:    03/15/2022

**CERTIFICATE OF SERVICE**

I, J. Daniel Silverman, hereby certify that I have served a true copy of the foregoing by mailing, electronically, a copy of same to:

Fred Wyshak, AUSA:     fred.wyshak2@usdoj.gov
Kaitlin O'Donnell, AUSA: Kaitlin.Odonnell@usdoj.gov

Signed under the penalties of perjury this 15th day of March, 2022.

*/s/ J. Daniel Silverman*
_____
J. Daniel Silverman

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) ) ) ) ) ) ) | Criminal No. 20cr10192<br><br>**DEFENDANT'S AFFIDAVIT IN SUPPORT OF DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS** |
| v. |  |  |
| TEVON NGOMBA, a/k/a "Chow," |  |  |
| Defendant. |  |  |

I, Tevon Ngomba, do hereby depose and state as follows:

1. My name is Tevon Ngomba and I am the Defendant in the above-entitled action.

2. All the facts in this Affidavit are true and correct to the best of my knowledge.

3. Katelyn Rago was my girlfriend and she allowed me to use her car whenever I wanted to, including driving her to and from work, running our errands, and going on dates.

4. She allowed me to store personal belongings in the trunk.

5. Often times, I would adjust the driver's seat and she would adjust it back due to our differences in height.

6. Once I had been detained by ATF agents, I was arrested and I was not free to leave prior to the search of the Black Acura.

7. I reserve the right to supplement this Affidavit.

8. After reviewing this affidavit with my attorney, I have authorized my attorney to sign this affidavit electronically for me.

Signed under the pains and penalties of perjury on this 15th day of March, 2022.

/s/ Tevon Ngomba
_____
Tevon Ngomba

9