UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | * | |
| | * | |
| v. | * | Criminal Action No. 1:20-cr-10192-IT |
| | * | |
| TEVON NGOMBA, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 30, 2022

TALWANI, D.J.

Pending before the court is Defendant Tevon Ngomba's Motion to Suppress Evidence

[Doc. No. 105]. For the following reasons, the motion is DENIED.

## I.    Background

In early July 2020, the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF"), in collaboration with state and local law enforcement and with the aid of a confidential

informant ("CI"), identified Ngomba as being involved in narcotics distribution in Somerville,

Massachusetts. Ex. A—ATF Reports [Doc. No. 106-1]. The CI reported that he had met Ngomba

at a party to celebrate Ngomba's recent release from prison and that Ngomba had given him

contact information to coordinate future narcotics transactions. Id. at 1-2. The CI then spoke to

Ngomba on two telephone numbers, 781-475-9237 and 857-247-5437, during which calls they

coordinated the sale of fifty grams of narcotics, suspected to be heroin or fentanyl, for $1,800 on

July 16, 2020. Id. at 2-3. Before the deal, the CI met with law enforcement and received $1,800

of government funds and an ATF vehicle equipped with hidden audio- and video-recording

equipment to use during the transaction. Id. at 4-5.

The morning of July 16, 2020, the CI and Ngomba finalized the logistics of the deal. Id. at 3. Ngomba instructed the CI to go to 31 Sydney Street in Somerville and park on the side of the street. Id. The CI drove to the meeting location while law enforcement set up surveillance of the area. Id. at 5. After the CI arrived, a black Acura sedan with Massachusetts license plate 5GJG20, registered to Katelyn Rago,[1] stopped nearby. Id. The car was driven by a white woman, with Ngomba in the front passenger seat. Id. at 3-4. Ngomba instructed the CI to follow him, and the two cars then drove to the Mystic River Development public housing complex at 30 Memorial Drive. Id. at 4, 6. At the housing complex, Ngomba got out of the Acura, went inside the housing complex, came out with a bag, and got into the CI's car. Id. at 4. The CI gave Ngomba $1,800 in exchange for a clear plastic bag containing suspected narcotics. Id. Afterwards, Ngomba returned to the Acura, and the CI went to meet with law enforcement. Id. The contents of the bag were later tested and confirmed to be a mixture containing fentanyl and weighing approximately 67.14 grams. Ex. C—Lab Report [Doc. No. 106-3].

On August 2, 2020, Ngomba texted the CI saying "Yo yo-yo" "Tryna get rid of joint." Ex. A—ATF Reports 7 [Doc. No. 106-1]. Ngomba and the CI then exchanged additional messages regarding the type of gun and the price. Id. at 7-12. During their negotiations, Ngomba used FaceTime to show the CI the gun. Id. at 7. Ngomba agreed to sell the CI a "Ruger" for $1,500 and also stated that he had a "Glock for sale." Id. at 9-10. The CI agreed to buy the Ruger the next day and expressed interest in the Glock. Id. at 10.

The morning of August 3, 2020, Ngomba messaged the CI to meet him at 31 Sydney Street, where the two had previously met for the drug transaction. Id. at 12. Before the

---

[1] Ngomba filed an Affidavit [Doc. No. 105-1] stating that Rago was his girlfriend.

deal, law enforcement provided the CI with $1,500 in government funds and an ATF vehicle equipped with hidden audio- and video-recording equipment, which transmitted live audio from the car to law enforcement. Id. at 13. Law enforcement also set up surveillance in the area. Id.; Ex. B—Somerville Police Report 1-2 [Doc. No. 106-2].

Law enforcement stationed on Temple Street saw the Acura stop in front of them, across from Sydney Street. Somerville Police Report 1-2 [Doc. No. 106-2]. Ngomba then got out the car and walked down Temple Street, away from Sidney Street. Id. at 2. At 10:06 a.m., the CI parked on Sidney Street. Id. at 13. Shortly thereafter, Ngomba approached the CI's car on foot and got into the front passenger seat. Ex. A—ATF Reports 7, 14 [Doc. No. 106-1]. Ngomba told the CI to park around the corner. Id. Ngomba then told the CI to give him the money and that he would return with the gun. Id. The CI refused to give Ngomba the money up front, so Ngomba left the car and returned to the Acura, where he removed what appeared to be a white t-shirt from a white bag in the Acura's trunk. Id.; Ex. B—Somerville Police Report 2 [Doc. No. 106-2]. Ngomba walked back towards the CI's car holding the white t-shirt and with a white towel over his shoulder. Id. While Ngomba was gone, the CI called law enforcement and told them that Ngomba had confirmed that he had a gun for sale and that he had left the CI's car to go get it. Ex. E—Audio Recording 26:30-29:10 [Doc. No. 106-5].

Ngomba returned to the CI's car on foot and got into the back seat. Ex. A—ATF Reports 7, 14 [Doc. No. 106-1]. He showed the CI a pistol and loaded magazine, Ex. E—Audio Recording 32:01- 32:17 [Doc. No. 106-5], and then told the CI to drop him off at Temple Street, Ex. A—ATF Reports 7 [Doc. No. 106-1]. The CI gave Ngomba $1,500, and Ngomba then appeared to put the gun, wrapped in the t-shirt and towel, under the driver's seat Id.; Ex. E— Audio Recording 33:05-34:05 [Doc. No. 106-5]. The CI drove Ngomba to Temple Street and

3

turned right on Memorial Road, where Ngomba got out of the car. Ex. A—ATF Reports 14 [Doc. No. 106-1]. The CI then drove away while Ngomba headed back to the Acura. Id. at 8; Ex. B—Somerville Police Report 2 [Doc. No. 106-2].

Once at the Acura, Ngomba first opened the trunk and then the front passenger seat. Ex. A—ATF Reports 15 [Doc. No. 106-1]. Law enforcement then saw him frantically pat his pockets and begin running back towards the CI, leaving the front door of the Acura open. Ex. B—Somerville Police Report 2 [Doc. No. 106-2].

Meanwhile, the CI checked the back seat of the ATF vehicle for the gun and discovered that Ngomba had left the t-shirt and towel but not the gun. Ex. A—ATF Reports 15 [Doc. No. 106-1]. The CI contacted a law enforcement agent and stated that Ngomba had taken the gun and the money but had left his cell phone in the car. Id. As they spoke, the CI saw Ngomba running back towards him. Id. at 8, 14. The agent told the CI to continue driving, and the CI went to a debriefing location and met with law enforcement. Id. Law enforcement recovered Ngoma's cell phone, the towel, and the white t-shirt from the car. Id. at 14.

Other officers detained Ngomba as he chased the CI's car. Id. When law enforcement stopped him, Ngomba had $1,500 in his hand. Id. Officers conducting surveillance of the Acura were informed of Ngomba's detention over the radio and told to conduct a motor vehicle stop of the Acura. Id. at 15. Law enforcement approached the Acura, where a woman was in the driver's seat. Id.; Ex. B—Somerville Police Report 3 [Doc. No. 106-2]. The woman identified herself as the owner of the car. Ex. B—Somerville Police Report 3 [Doc. No. 106-2]. Law enforcement asked her to exit the car, informed her of the ongoing investigation, and advised of her Miranda rights. Id. She denied knowing whether there was anything illegal in the car and then gave law

enforcement her consent to search the car, both verbally and in writing. Id.; Ex. A—ATF Reports 16 [Doc. No. 106-1].

During their search of the Acura, law enforcement found a bag containing suspected narcotics in the glove compartment alongside Ngomba's wallet and identification documents. Ex. A—ATF Reports 16 [Doc. No. 106-1]; Ex. B—Somerville Police Report 3 [Doc. No. 106-2]. The contents of the bag were later tested and confirmed to be a mixture containing fentanyl and weighing approximately 16.46 grams. Ex. D—Lab Report [Doc. No. 106-4]. Agents also found the white bag that law enforcement had previously observed Ngomba remove from the trunk when he first returned to the car during the gun deal with the CI. Ex. A—ATF Reports 16 [Doc. No. 106-1]; Ex. B—Somerville Police Report 3 [Doc. No. 106-2]. The bag contained a Ruger handgun with an obliterated serial number, which was loaded with a magazine containing three rounds of ammunition, and a bag of suspected cannabis. Ex. A—ATF Reports 16 [Doc. No. 106-1]. When asked about the white bag in the trunk, the driver stated that it belonged to "Tevon." Ex. B—Somerville Police Report 3 [Doc. No. 106-2]. This information was relayed to the officers detaining Ngomba who then placed him under arrest. Id.

On September 15, 2020, a grand jury returned a three-count Indictment [Doc. No. 1], charging Ngomba with one count of distribution of and possession with intent to distribute forty grams of more of fentanyl; one count of possession with intent to distribute fentanyl; and one count of being a felon in possession of a firearm and ammunition. Ngomba thereafter filed the pending Motion to Suppress Evidence [Doc. No. 105].

## II.    Discussion

Ngomba argues that the evidence seized from white bag inside the Acura—specifically the gun and the loaded magazine—must be suppressed because the driver and owner of the car,

Katelyn Rago, did not have the authority to consent to a search of the bag. The government counters that law enforcement had probable cause to believe that the Acura contained evidence of criminal wrongdoing and that the search was therefore valid under the automobile exception to the warrant requirement; no consent was needed. The court agrees.

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception is the automobile exception, which provides that law enforcement may perform a warrantless search of a car so long as the officer has probable cause to believe that the vehicle contains contraband. See Carroll v. United States, 267 U.S. 132, 154 (1925). Where law enforcement has probable cause to search a container in a car, the automobile exception also allows the search of that container without first obtaining a warrant. See California v. Acevedo, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained").

"Probable cause exists when 'the facts and circumstances as to which police have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found.'" United States v. Dion, 859 F.3d 114, 131-32 (1st Cir. 2017) (quoting United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014)). In evaluating the facts underlying a search, the relevant issue is "the collective information known to the law

enforcement officers participating in the investigation," not what is known by any individual officer. United States v. Azor, 881 F.3d 1, 8 (1st Cir. 2017).

In this case, law enforcement conducting the investigation had probable cause to search both the Acura and the white bag where they knew that (1) Ngomba had arrived at the scene in the Acura for a suspected gun deal; (2) Ngomba appeared to retrieve the gun from the white bag in the Acura mid-deal and then showed it to the CI; (3) Ngomba did not leave the gun in the CI's car; (4) Ngomba returned to the Acura and opened the trunk and the passenger door before running back towards the CI's car; and (5) Ngomba was detained with the $1,500 in hand but no gun. Based on the totality of the circumstances, law enforcement had probable cause to believe that Ngomba had returned the gun to the Acura and did not need a warrant to search any part of the car, including any containers therein, that could conceal a handgun.

### III.    Conclusion

For the forgoing reasons, Ngomba's Motion to Suppress Evidence [Doc. No. 105] is DENIED.

IT IS SO ORDERED.

March 30, 2022                                          /s/ Indira Talwani
                                                       United States District Judge